# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| | ) | |
| | ) | |
| **INNOVATIVE MOLD SOLUTIONS, INC.,** | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| | ) | **NO. 15-CV-40010** |
| **v.** | ) | |
| | ) | |
| **CENTRAL MUTUAL INSURANCE** | ) | |
| **COMPANY, INC., ALL AMERICA** | ) | |
| **INSURANCE COMPANY, INC., and** | ) | |
| **CENTRAL INSURANCE COMPANIES** | ) | |
| | ) | |
| **Defendants.** | | |

_____

## ORDER AND MEMORANDUM OF DECISION ON PLAINTIFF'S DAMAGES AND REASONABLE ATTORNEY'S FEES AND COSTS

### September 29, 2017

**HILLMAN, D.J.**

### Background

This case was filed in response to All America Insurance Company and Central Mutual

Insurance Company's ("Central") refusal to defend Innovative Mold Solutions, Inc. ("IMS") in a

*qui tam* lawsuit brought against them under the federal False Claims Act ("FCA").[1] IMS was

served with the complaint for the underlying action ("Ladas action") on February 15, 2012.[2]

After Central refused to defend IMS in the Ladas action, Kelley Drye & Warren LLP ("Kelley

Drye") and Bleakley Platt & Schmidt, LLP ("Bleakley Platt") were hired by IMS to represent

---

[1] *United States of America ex rel. Ladas v. ITT Corp.*, et al., No. 3:10-CV-1132 (D.Conn.).
[2] The complaint alleged three counts: violation of the FCA, 31 U.S.C §3729(a)(1)(A); violation of the FCA, 31 U.S.C §3729(a)(1)(B); and conspiracy to violate the FCA, 31 U.S.C §3729(a)(1)(C).

them. After IMS spent over $400,000 in legal fees in defense of the Ladas action, the Connecticut District Court dismissed it for lack of standing and failure to plead sufficient particularity under the Federal Rules of Civil Procedure 9(b). The plaintiff then appealed to the 2nd Circuit and IMS paid $25,000 to settle the suit.

IMS subsequently filed this complaint against Central in this Court. On this case they are represented by LaFortune & LaFortune ("LaFortune"), seeking relief for breach of their duty to defend in the Ladas action.[3] Pursuant to this Court's Memorandum and Order On Defendants' Motion For Judgment On The Pleadings (Docket No. 32) And Plaintiff's Cross-Motion for Judgment On the Pleadings (Docket No. 36) ("Judgment Order"), I found Central had breached its duty to defend the Ladas action.[4] (Docket No. 57). This Order And Memorandum Of Decision addresses the total amount of damages, including attorney's fees and costs IMS will be awarded.

## Discussion

### *Legal Standard*

Insurers who provide liability insurance have a duty to defend the insured against claims falling under their policy and if an insurer fails to do so, they can be found liable for that breach. *New England Environ. Tech. Corp. v. American Safety Risk Retention Group, Inc.*, 810 F.Supp.2d 390, 396 (2011). The determination of damages is analogous to those for breach of contract claims and are considered to be "those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties." *Polaroid Corp.,*

---

[3] Additional claims of implied covenant of good faith and fair dealing and unfair and/or deceptive acts and/or insurance practices under M.G.L. c. 93A and M.G.L. c. 176D were also brought against Central but are not discussed for purposes of this Order and Memorandum.
[4] From herein, "Central" refers solely to Defendant All American Insurance Company because Defendant Central Mutual Insurance Company was found not to have had a duty to defend.

*v. Travelers Indem. Co*., 414 Mass. 747, 762, 610 N.E.2d 912 (1993); quoting *Delano Growers'*

*Coop. Winery v. Supreme Wine Co*., 393 Mass. 666, 680, 473 N.E.2d 1066 (1985). In

Massachusetts, an insurer's breach of their duty to defend a policyholder makes them liable to

the insured for all defense costs, including reasonable attorney's fees in both the underlying

litigation and the duty to defend claim. *New England Environ. Tech.* Corp., 810 F.Supp.2d at

396; see *Polaroid Corp*., 414 Mass. at 762; *Preferred Mut. Ins. Co.,* 426 Mass. at 95. The courts

have reasoned that failure to provide such relief would provide insurers a significant financial

advantage over their policyholders by allowing them the ability to refuse to defend and

obligating the insured to bear the cost of both the underlying litigation and the litigation against

the insurers for failure to defend. *Preferred Mut. Ins. Co.,* 426 Mass. at 95. The failure to allow

defense costs as relief after an insured party establishes that their insurer had a duty to defend

and failed to do so, would leave the insured footing the bill for two litigations they should not

have been required to defend or initiate. In essence, failure to award a prevailing insured party

reasonable costs and attorney fees in a duty to defend claim would negate the benefit of having

liability insurance because the insured would be no better off financially. *Id*.; *see Wilkinson v.*

*Citations Ins. Co*., 447 Mass. 663, 671, 856 N.E.2d 829, 836. No showing of fraudulence or bad

faith on behalf of the insurer for failing to defend is required. *Liberty Mut. Ins. Co. v. Cont. Cas.*

*Co*., 771 F.2d 579 (1st Cir. 1985).

The case law is clear that when attorney's fees and costs are awarded to a prevailing

party, they must be reasonable, as established by the prevailing party. *Tennessee Gas Pipeline*

*Co. v. 104 Acres of Land,* 32 F.3d 632, 634 (1st Cir.1994). The First Circuit has held that "if an

alternative method is not expressly dictated by applicable law, we have customarily found it best

to calculate fees by means of the time and rate method known as the lodestar." *Weinberger v.*

*Great Northern Nekoosa Corp*., 925 F.2d 518, 526 (1st Cir. 1991). In analyzing under the lodestar method, the court must determine the number of hours reasonably spent working productively on the case multiplied by a reasonable attorney rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. The determination of reasonableness falls within the wide discretion of the court. *Id.* at 434. The court should thoroughly examine the records and eliminate "time that was unreasonably, unnecessarily, or inefficiently devoted to the case" and discount "excessive, redundant, or otherwise unnecessary" work. *Id.* Upon establishing the reasonable number of hours productively expended on the case and applying an appropriate rate, the court should provide a "concise but clear" explanation. *Id*. at 437.

<u>*The Ladas Action*</u>

Central argues that the fees accrued during the Ladas action are excessive and unreasonable and therefore, IMS is not entitled to them. Central points to the fact that multiple law firms handled it, a high number of attorneys worked on it, the use of block billing and the excessive hourly rates charged. Central is not automatically responsible for any and all costs associated with the Ladas action, to the extent that the fees are unreasonable however, I find the fees charged by Kelley Drye and Bleakley Platt to be reasonable. *Polaroid Corp.*, 414 Mass at 762, 610 N.E.2d at 921.

Generally, in assessing the reasonableness of the hours and rates, the Court looks to the complexity of the issues presented, the location of the litigation, and the exposure of IMS for Central's failing to defend. Although there was some minimal duplicative work due to the overlapping of legal representation, I do not find that work to be unreasonable. *See New England Enviro. Tech. Corp.,* 810 F.Supp.2d 390 (The insured was entitled to the attorney's fees and costs although there was some inefficiencies and duplicative work in billing caused by

overlapping of legal representation) In fact, I find that lead attorney, Christopher Palermo ("CCP"), was more than reasonable in his billing practice considering the challenging legal and factual issues presented. This included allegations of improper action by IMS over a lengthy period of time requiring extensive review of significant documentation. The potential damage IMS was exposed to and the favorable outcome of the case were significant, and there was no dispute that the continued existence of IMS was at stake in the Ladas action. CCP's rate, although higher than the norm in the Worcester area, is reasonable for a *qui tam* defense case, such as the Ladas action, in Connecticut.[5] Central points to the fact that CPP charged a lesser amount once he transferred from Kelley Drye to Bleakley Platt in an effort to show why his rates are unreasonable. However, I find the fact that he lowered his rates upon transferring to a new firm is consistent with him charging the going rates.

Moreover, Central fails to acknowledge that it was their "unjustified refusal to defend under its policy" that caused IMS to have to seek their own counsel. *Preferred Mut. Insu.*, 426 Mass. at 95; see *Palermo v. Fireman's Fund. Ins. Co.*, 42 Mass. App. Ct. 283, 676 N.E.2d 1158, 1163 (1997) ("An insurer who fails to defend its insured assumed the consequential risks of that breach of its insurance contract."). Therefore, Central cannot now, *after refusing to defend*, try to "claim prejudice in the form of billing format or litigation practices that do not meet *its* standards, since it could have assumed the defense and imposed the standard." *Liberty Mutual Insur. Co. v. Black & Decker Corp.*, 383 F. Supp.2d 200, 210 (D. Mass. 2004). (Emphasis added).

---

[5] Attorney Palermo transferred from Kelley Drye to Bleakley Platt and the Ladas action transferred with him. His rate went from $690 to $495 but it should be noted that he is a New York lawyer and the Ladas action was litigated in Connecticut therefore, he is subject to a comparable rate for legal work of attorneys with similar skills and experience in that community.

Therefore, the Court finds the attorney's fees associated with Kelly Drye and Bleakley Platt to be reasonable and award them to the Plaintiff with one exception. The invoices provided pursuant to Plaintiff Innovative Mold Solutions, Inc.'s Submission Of Supplemental Legal Bills, are included in the award for damages as they are not unreasonable and arise naturally out of the Central's breach of duty to defend.[6] (Docket No. 158). However, because the work conducted on December 12th, 14th, and 22nd of 2016 and January 7, 2017 is clearly with regards to an independent state court matter,[7] I have deducted those hours from the total amount to be awarded to Bleakley Platt.[8]

### *The Duty to Defend Action*

When applying the lodestar method to determine the reasonableness of fees, the court may look to a number of factors such as the complexity of the legal issues presented, the invoices provided and whether or not "counsel substantially exceeded the bounds of reasonable effort." *United Stated v. Metropolitan Dist. Comm'n*, 847 F.2d 12,17 (1st Cir. 1988); see *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001). It is also within the courts discretion to discount or disallow hours that have are too generic or lack sufficient detail for the court to make an assessment on their reasonableness. *Torres-Rivera v. Oneill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

---

[6] The invoices provided are from Bleakley Platt and LaFortune only as they have continued to work with IMS on the present action.

[7] *Innovative Mold Solutions, Inc. v. Hanover Insurance Group, Inc., et al.*, No. WOCV2015-00055-C (Worcester Super. Ct.).

[8] 12/12/16: $693.00 was billed for "(f)urther drafting and revision of affidavit relating to attorney's fees in IMS v. Hanover."; 12/14/16: $693.00 was billed for "(f)urther work on draft affidavit regarding attorney's fees in Hanover insurance recover action; send draft to Mr. LaFortune."; 12/22/16: $594.00 was charged for "(w)ork on affidavit in support of application for attorney's fees from Hanover."; 1/07/17: $2,029.50 was charged for "(f)inal review and revision in connection with Hanover fee application; review invoices in connection with affidavit summarizing fees and disbursements for Hanover." See **** Docket and Exhibit.

Although the stakes in the present case were high for IMS, as they were with the Ladas case, I find that in contrast to the Ladas action, this case did not present unduly complex and complicated legal issues but was in fact, a straightforward breach of duty to defend action. The number of hours billed are well in excess of what an attorney who is experienced in insurance matters, which Plaintiff's attorney asserts himself to be, should bill. (Docket No. 88). After thorough review of the invoices provided, it is clear that there is a significant amount of duplicative or unnecessary work billed throughout this case I will discuss a few examples.

From November 30, 2015 until January 7, 2016, the date IMS's counsel electronically filed the his Memorandum In Opposition To The Defendants' Motion For Judgment On The Pleadings And In Support Of Innovative Mold Solutions' Cross-Motion For Judgment On The Pleadings Or For Summary Judgment (the Memorandum), LaFortune billed more than 250 hours. Based on the description of the work being conducted during those hours, it is clear that the majority, if not all, of the work was dedicated to writing the Memorandum. SML billed over 134 hours, 90 of which the sole entry was described as working on the brief without a more detailed description. During this same time period, SML charged an additional 44 hours, where the description was working on his brief but also included the completion of another minor task, such as sending or drafting an email. To add to the number of hours billed for the completion of the Memorandum, SML's research assistant, DOB, as well as two other employees, M and LM, billed an additional 113.7 hours.[9] The tasks completed by DOB, M, and LM, are mostly

---

[9] It is inferred in the invoices that DOB is SML's research assistance however, this is unconfirmed. It is also unclear as to whether DOB, M, and LM are attorney's as they are not identified. DOB charged $325/hr; M and LM charged $195/hr.

research, reviewing cases, and drafting or revising for SML. Lastly, SML's partner, GBL, tacked on 5.6 hours for review of the drafts and final Memorandum.

I acknowledge the importance of allocating certain tasks to different attorneys with varying levels of experience because it can be both cost and time effective. However, I cannot ignore the fact that in addition to the multiple attorneys working to assist with legal research for the Memorandum, SML billed a significant amount of time for what appears to be the same work. I find that the number of hours expended on the one task of completing the Memorandum, while important to the case, were duplicative and excessive.

Additionally, SML's partner, GBL, who up until the summer of 2017 only appears to "review" documents and occasionally discuss legal issues with SML but is otherwise not involved in this matter, charged over 45 hours for reviewing documents. It appears from the invoices, and there is no testimony to rebut the fact, that GBL's review of documents was unnecessary. Nearly all of the documents she reviewed had already been reviewed and revised (many times, repeatedly) by DOB and/or SML. The fact that GBL's contribution was limited to what appears to be proof reading (charged at the rate of $395/hour) on a case she was not otherwise involved in, is excessive. If GBL was doing more substantial work, the invoices fail to sufficiently describe that work leaving the court with the inability to properly assess whether her work was "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S at 430.

Therefore, the high number of hours billed is concerning based on the fact that the Plaintiff was engaged in a parallel litigation in state court. *IMS v. Hanover* is a lawsuit brought against a different insurance company and also stems from the failure to defend IMS in the Ladas action. It appears the *Hanover* case has very similar if not identical issues, and was pending contemporaneously with the case at bar. Although I decline to accept the argument that

LaFortune was double billing, it is clear by the invoices that a large amount of the work billed in the Central matter was being conducted for both cases simultaneously. Additionally, within those invoices there is little information to specify exactly what time was devoted to which case and for how long. Consistent with the holdings in *Hensley* and *Torres-Rivera*, I find that the lack of detail prevents me from being able to appropriately asses and a deduction in fees will be made appropriately. 461 U.S at 430; 524 F.3d at 336.

Lastly, I find the rates charged by LaFortune are well in excess of any reasonable rate to be charged by an attorney with similar experience in the Worcester area. Although there is no question that the stakes were high for IMS and they prevailed on the case at bar, I do not agree with SML's statement that his rate of $575/hour is reasonable compared to Boston law firms charging "in the aggregate 3 or more times" more than that. (Docket 88-1, pp.16). It is clear that SML has been practicing law for many years, but it is unclear exactly what his experience is handling insurance cases. As stated previously, the high number of hours spent on research by SML, DOB, M, and LM not only appears to be excessive but suggests a lack of experience with the particular legal matters presented in this case. Accordingly, I am reducing the hourly rate charged "to reflect the rates which would be charged by attorneys with comparable experience in the Worcester/Central" area. *Thayer vs. City of Worcester*, D. Mass., No. CV 13-40057-TSH (Mar. 29, 2017). *See Fryer v. A.S.A.P. Fire & Safety Corp.*, 750 F.Supp.2d 331, 339 (D. Mass. 2010)(to determine reasonable hourly rate, the court applies prevailing rates in the community taking into account factors such as qualifications, experience and specialized competence of attorneys involved; relevant community is where the court sits).

As demonstrated by the examples above, I find that the hours billed by LaFortune were excessive and unnecessary and were billed at an excessive rate. Additionally, their billing style

failed to articulate the work rendered in order for the court to make an adequate assessment of reasonableness. For the reasons stated therein, I have reduced Lafortune attorney's fees and costs to the reasonable amount of $320,000.

### *IMS v. Hanover: The State Court Action*

The Plaintiff argues that they are entitled to reasonable attorney's fees and costs for *IMS v. Hanover* in state court. I disagree. As stated previously, the appropriate damages for Central's failure to defend are those that "arise naturally" out of their breach. *Polaroid Corp.*, 414 Mass. At 762, 610 N.E.2d at 921. I find the lawsuit that IMS filed against *Hanover,* a completely independent and separate entity, was not a natural or reasonably contemplated result of Central's failure to defend in the Ladas action. I therefore find that Central is not responsible for paying the attorney's fees and costs associated with the *Hanover* litigation.

### *The Award*

IMS incurred a significant burden litigating the Ladas action as well as the case at bar, which was caused by Central's failure to defend. I find that IMS is entitled to the $25,000 settlement amount and the reasonable attorney's fees and costs of $731,545.74 ($455,793.11 for Kelley Drye and $279,762.13 less the 4,009.50 for work pertaining to *IMS v. Hanover* in 2017, totaling $275,752.63 for Bleakley Platt). In addition, IMS is awarded the reasonable attorney's fees and costs for the case at bar, which I have determined to be $320,000.

### Conclusion

For the foregoing reasons, the Motion Of Plaintiff Innovative Mold Solutions, Inc., For An Order Compelling Defendants To Pay IMS's Legal Fees Incurred In This Litigation (Docket No. 87) is **granted,** *in part* and **denied,** *in part*. The Court awards IMS $25,000 for the Ladas action settlement amount, $455,793.11 for Kelley Drye's attorney's fees and costs, $275,752.63

for Bleakley Platt's attorney's fees and costs, and $320,000 for LaFortune's attorney's fees and costs. The Plaintiff Innovative Mold Solutions, Inc.'s Request For Mandatory Statutory Interest On IMS's Damages (Docket No. 159) motion for prejudgment interest at the rate of 12%, running from the date of the breach is hereby ***granted***. (Docket No. 159).

**SO ORDERED.**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
